COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-448-CV

 

 

BELL HELICOPTER TEXTRON INC.                                          APPELLANT

 

                                                   V.

 

GLOBAL TECHNICAL SERVICES, INC.                                        APPELLEE

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is a breach of contract
case involving competing motions for summary judgment.  Because we hold that the trial court
correctly denied the motion for partial summary judgment filed by Appellant
Bell Helicopter Textron Inc. (ABell@) and
correctly granted the motion for summary judgment filed by Appellee Global
Technical Services, Inc. (AGlobal@), we will affirm
the trial court=s judgment.

I.  Facts and Procedural History

Global provides temporary
contract labor to customers.  Global
executed a Basic Ordering Agreement (ABOA@) with
Textron Inc., Bell=s parent
company, to provide technical labor for Bell. 
The BOA required Global to provide commercial general liability (ACGL@) insurance
naming Bell as an additional insured. 
Specifically, the BOA contained the following provision:

12.02 Insurance.  [Global] shall maintain and
keep in force . . . the

 following minimum insurance coverage and
limits . . . .

 

. . . .

 

(b)    Commercial General Liability Insurance (including blanket
contractual liability and broad form property damage) with Products
Liability/Completed Operations coverage with minimum combined single limit per
occurrence of $5,000,000.

 








To satisfy this contractual
obligation, Global obtained a CGL policy issued by National Union Fire
Insurance Company (ANational
Union@) for the period from October 1, 2002, to October 1, 2003.  The CGL policy that National Union issued
contained an endorsements section, which clearly indicated that certain listed
and attached endorsements were a part of the policy on its effective date,
including an endorsement identified as AV207. 
Endorsement AV207 was titled AExclusion - Advertising Injury,@ and it essentially replaced the previous Apersonal and advertising injury liability@ coverage with Apersonal
injury liability@ coverage
alone.  The effect of endorsement AV207
was to delete the Aadvertising
injury@ coverage from the CGL policy. 
It is undisputed that the CGL policy issued by National Union did not
provide coverage for advertising injury. 

A.  The Underlying Suit

As part of its agreement to
provide Bell with temporary contract labor, Global sent Wayne Fowler to work at
Bell, where he worked on projects related to Bell=s V-22 Osprey aircraft.  In
2003, Fowler sued Bell for copyright infringement, among other claims, alleging
that Bell had unlawfully copied Fowler=s software Ain the
course of advertising its V22 Osprey Aircraft and its maintenance and support
services . . . .@[2]  








After being served with
Fowler=s suit, Bell requested indemnity and defense from National Union.  National Union denied Bell=s claim.  National Union=s letter to Bell denying the claim stated that Athe lawsuit is essentially a copyright infringement lawsuit,@ and although such a claim would be covered under Aa traditional CGL policy,@ in this case Global=s policy specifically excluded coverage for any Aadvertising injury.@ 

        B. 
The Suit at Hand

Bell sued Global for breach
of contract and subsequently filed a motion for partial summary judgment on the
issue of whether the CGL policy Global acquired for Bell from National Union
satisfied the BOA=s
contractual requirement that Global provide ACommercial General Liability Insurance.@   Global also filed for summary
judgment, claiming that (1) Global had no duty to defend or to indemnify Bell
for Fowler=s claims in
the underlying suit because Fowler=s claims were Aadvertising
injury@ claims that were not covered under the National Union CGL policy and
(2) the BOA only required Global to obtain CGL insurance and to name Bell as an
additional insured; it did not require or specify that Global was to obtain
advertising injury coverage.  The trial
court granted Global=s motion and
denied Bell=s
motion.  This appeal followed.  In two issues, Bell argues that as a matter
of law the term ACommercial
General Liability Insurance@ contemplates advertising injury coverage and that Global=s failure to purchase a CGL policy that included advertising injury
coverage constituted a breach of the BOA. 

 

 








II.  Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  When a trial court=s order granting
summary judgment does not specify the ground or grounds relied on for its
ruling, the summary judgment will be affirmed on appeal if any of the theories
presented to the trial court and preserved for appellate review are
meritorious.  Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  The summary judgment will be affirmed only if
the record establishes that the movant conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.  Clear
Creek Basin, 589 S.W.2d at 678.

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.  

III.  Granting Global=s Motion for Summary Judgment








Bell argues that the trial
court erred by granting Global=s motion for summary judgment and by denying its own motion for
partial summary judgment.  The crux of
Bell=s argument is that as a matter of law the term ACommercial General Liability Insurance@ encompasses four basic types of coverages: (1) bodily injury
coverage; (2) property damage coverage; (3) personal injury coverage; and (4)
advertising injury coverage. 
Accordingly, Bell argues that because the BOA required Global to provide
CGL insurance, it necessarily required Global to purchase a policy that
included these four basic CGL coverages, including advertising injury
coverage.  Bell contends that Global
breached the BOA when it obtained a CGL policy that excluded advertising injury
coverage and that therefore the trial court erred by granting summary judgment
for Global.[3]

A.  The Bell-Global Contract








In early 2001, Bell held a
meeting soliciting bids for a new labor contract.  After attending the meeting and considering
the potential contract, Global submitted the winning bid.  After winning the bid, Global negotiated only
the price and payment with Bell.  The
parties did not negotiate Global=s obligations in defending lawsuits, obtaining insurance, or any other
matter.  Bell presented Global with a BOA
that is almost identical to the version that the parties ultimately signed.[4]  Accordingly, the terms and provisions in the
BOA are those created and incorporated exclusively by Bell.

Only one provision of the BOA
referred to insurance.  As set forth
previously, the express terms of that provision required Global to provide ACommercial General Liability Insurance (including blanket contractual
liability and broad form property damage) with Products Liability/Completed
Operations coverage.@  In the trial court, Bell provided expert
affidavits in an attempt to conclusively establish that the term ACommercial General Liability@ necessarily includes advertising injury coverage.  Bell encourages this court to so hold.

1.  The BOA is Unambiguous








The question of whether a
contract is ambiguous is one of law for the court.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  We
determine whether the contract is ambiguous by looking at the contract as a
whole in light of the circumstances present when the parties entered it.  Universal Health Servs., Inc. v.
Renaissance Women=s Group,
P.A., 121 S.W.3d 742, 746 (Tex. 2003).  An ambiguity exists when, after application
of the canons of contract interpretation, the language remains reasonably
susceptible to more than one reasonable interpretation.  See Burlington N. & Santa Fe
Ry. Co. v. S. Plains Switching, Ltd., 174 S.W.3d 348, 356 (Tex. App.CFort Worth 2005, no pet.).  An
ambiguity does not exist merely because the parties advance differing
interpretations.  See Fiess v. State
Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006).  But when the words of a contract may be given
a definite meaning according to a canon of contract interpretation, there is no
ambiguity and the court will construe the language as a matter of law.  SAS Institute, Inc. v. Breitenfeld,
167 S.W.3d 840, 841 (Tex. 2005).  

One common law canon of
contract interpretation dictates that when choosing between different meanings
advanced by both parties, we must construe the contract most strictly against
the party that supplied the terms.  See
Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62-63, 115 S. Ct.
1212, 1219 (1995); ASI Tech., Inc. v. Johnson Equip. Co., 75 S.W.3d 545,
548 (Tex. App.CSan Antonio
2002, no pet.).  








Bell contends that a national
standard indicates that the term ACommercial General Liability Insurance,@ as used in the BOA, necessarily includes advertising injury
coverage.  In contrast to Bell=s interpretation, Global contends that the term ACommercial General Liability Insurance@ should be given its plain meaning 
because the face of the BOA did not define the term or describe the
insurance required other than as ACommercial General Liability Insurance (including blanket contractual
liability and broad form property damage) with Products Liability/Completed
Operations coverage.@  Because Bell supplied the BOA=s terms in the present case, we must construe the meaning of its terms
most strictly against Bell.  See
Mastrobuono, 514 U.S. at 62-63, 115 S. Ct. at 1219; ASI Tech.,
Inc., 75 S.W.3d at 548. 

After applying this canon of
contract interpretation, it is clear that the term ACommercial General Liability Insurance@ as used in the BOA is not reasonably susceptible to more than one
reasonable interpretation.  See
Burlington N. & Santa Fe Ry. Co., 174 S.W.3d at 356.  Accordingly, the term as used in the BOA is
unambiguous and we will construe the language as a matter of law.[5]  See Breitenfeld, 167 S.W.3d at 841.

2.  Parties= Intent








The objective intent of the
parties as expressed in an agreement controls the construction of an
unambiguous contract, not a party=s after‑the‑fact conduct. 
In re Dillard Dep=t Stores, Inc., 186 S.W.3d 514, 515
(Tex. 2006) (per curiam); see also Matagorda County Hosp. Dist. v. Burwell,
189 S.W.3d 738, 740 (Tex. 2006) (we are to interpret contracts by ascertaining
the true intent of the parties as expressed in the written language of the
contract itself).  In ascertaining the
true intent of the parties, we look to their objective intent, not their
subjective intent.  See Calpine
Producer Serv., L.P. v. Wiser Oil Co., 169 S.W.3d 783, 787 (Tex. App.CDallas 2005, no pet.).  We need
not consider Athe
intention which the parties may have had, but failed to express in the
instrument.@  Republic Nat=l Bank of Dallas v. Nat=l Bankers Life Ins. Co., 427 S.W.2d
76, 80 (Tex. Civ. App.CDallas 1968,
writ ref=d n.r.e.).  We must look to the
entire contract in an effort to harmonize and give effect to all provisions so
that none will be rendered meaningless.  Mabrey
v. SandStream, Inc., 124 S.W.3d 302, 314 (Tex. App.CFort Worth 2003, no pet.).








The BOA=s only provision dealing with CGL insurance, when read together with
the entire contract, reveals the intent of the parties.  Bell manifested its intent by requesting ACommercial General Liability Insurance (including blanket contractual
liability and broad form property damage) with Products Liability/Completed
Operations coverage.@  Nowhere in the Ainsurance@ provision
of the BOA did Bell indicate that the term commercial general liability
included advertising injury coverage. 
Nowhere in the provision did Bell manifest an intent for Global to
procure advertising injury coverage.  In
fact, the words Aadvertising
injury@ are absent from the BOA altogether. 
The only intent manifested by Bell in the BOA=s insurance provision was its intent that the CGL insurance include
blanket contractual liability and broad form property damage with Products
Liability/Completed Operations coverage. 

If Bell intended, at the time
of formulating and executing the BOA, that the term CGL encompass the four
basic coverages it now claims are traditionally included in a standard CGL
policy, it very well may have simply required ACommercial General Liability Insurance@ and nothing more[6]
or may have required a Astandard@ or Atraditional@ CGL policy.  But Bell explained
in the BOA its intent as to the coverage it expected by inserting the
parenthetical A(including
blanket contractual liability and broad form property damage)@ after the term ACommercial
General Liability Insurance.@  By this language, Bell
specifically requested a CGL policy that included certain coveragesCblanket contractual liability and broad form property damageCbut made no mention of advertising injury coverage.  








Bell offered expert affidavit
testimony that a national customary usage of the term ACommercial General Liability@ exists and that this national understanding establishes that CGL coverage
encompasses the four identified basic coverages.  But we construe a policy according to what it
says, not what any regulators or individual insurers thought it said.  Fiess, 202 S.W.3d at 746.  Although evidence of this type of custom
or usage is generally admissible to help ascertain the parties= true intent, see Mescalero Energy, Inc. v. Underwriters Indem.
General Agency, Inc., 56 S.W.3d 313, 323 (Tex. App.CHous. [1st Dist.] 2001, pet. denied), it cannot operate to vary or
contradict the terms of a plain and unambiguous contract.  See Corso v. Carr, 634 S.W.2d 804, 808
(Tex. App.CFort Worth
1982, writ ref=d n.r.e.).
Accordingly, it is the objective intent of the parties, and not a national
standard, that is at issue in this case. 
See Calpine Producer Serv., L.P., 169 S.W.3d at 787.     To determine the parties= objective intent, we look to the intention Bell expressed in the
contract, not the intention that Bell may have had but failed to express.  See Republic Nat=l Bank of Dallas, 427 S.W.2d at 80. 








Bell would have us ignore and
hold meaningless the parenthetical that follows the term ACommercial General Liability Insurance@ specifically delineating the coverage Bell expects.  This we cannot do; ascertaining the true
intent of the parties demands a complete and thorough examination of the entire
contract, so we must give meaning to these parenthetical terms in order to
harmonize the insurance provision with the contract as a whole.  See Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996) (AWe presume that the parties to a contract intended every clause to
have some effect.@); see
also Mabrey, 124 S.W.3d at 314. 
Looking to the entire contract and giving meaning to all of its terms in
our effort to ascertain the true intent of the parties as expressed in the
language of the BOA itself, we hold that the intent of the parties as expressed
in the language of the BOA was to require only CGL insurance containing the
expressly listed coverages and not Aadvertising injury@ coverage.  See Matagorda
County Hosp. Dist., 189 S.W.3d at 740; accord Global Pipelines Plus,
Inc. v. John E. Chance & Assoc., Inc., 870 F.Supp. 711, 714 (E.D. La.
1994) (granting summary judgment for defendant on claim that defendant breached
contract between the parties requiring defendant to provide CGL coverage by
providing CGL insurance that excluded professional liability coverage).  Therefore, the trial court properly denied
Bell=s motion for partial summary judgment. 


B.  Global=s Motion for Summary Judgment








Global asserted three summary
judgment grounds to the trial court.  The
first two grounds claimed that Global had no duty to defend or indemnify Bell
because the claims or causes of action against Bell were outside the scope of
Global=s obligation.  The third ground
claimed that Global could not have breached the BOA because the BOA did not
require coverage for advertising injuries. 
In its fax ruling granting Global=s motion for summary judgment, the trial court stated, AD. Global Tech M/S/J is granted.@  Because the trial court=s order granting Global=s summary judgment likewise did not specify the ground or grounds
relied on for its ruling, we must  affirm
the summary judgment on any meritorious theory presented to the trial
court.  See Knott, 128 S.W.3d at
216; Star-Telegram, Inc., 915 S.W.2d at 473.  

Having held that the term ACommercial General Liability Insurance@ as used in the BOA insurance provision did not, as a matter of law,
encompass advertising injury coverage, we further hold that Global conclusively
established that it did not breach the BOA as a matter of law.  Because Global conclusively negated an
essential element of Bell=s breach of
contract claim, Global was entitled to summary judgment on that claim.  See Mason, 143 S.W.3d at 798.  We overrule Bell=s two issues on appeal.

                                        IV.  Conclusion

Having held that the term ACommercial General Liability Insurance@ did not include advertising injury coverage in the present case, and
having overruled Bell=s issues on
appeal, we affirm the trial court=s judgment.

 

 

SUE WALKER

JUSTICE

 

PANEL
A: CAYCE,C.J.; DAUPHINOT and WALKER, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.








DELIVERED: December 14, 2006











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NO.
02-05-448-CV

 

 

BELL HELICOPTER TEXTRON INC.                                          APPELLANT

 

                                                   V.

 

GLOBAL TECHNICAL SERVICES, INC.                                        APPELLEE

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

Because I believe that Appellant Bell Helicopter Textron Inc. raised a
genuine issue of material fact, I respectfully dissent from the majority's
opinion.  I would hold that the trial
court erred by granting summary judgment and remand for a trial on the merits. 

 

 

LEE ANN DAUPHINOT

                JUSTICE

 

DELIVERED: December 14, 2006











[1]See Tex. R. App. P. 47.4.





[2]Fowler=s
lawsuit was tried in federal district court, and the trial judge granted Bell=s
motion for judgment as a matter of law in July 2005.  





[3]Bell
raises other alleged breaches of the BOA by Global, but Bell did not plead
these breaches in the trial court. 





[4]The
only difference between the initial version of the BOA and the signed version
is Bell=s
inclusion of a provision for a two percent discount it would receive if it paid
Global within fifteen days of invoice. 
But Bell agreed that Global could strike that provision from the
agreement. 





[5]In
fact, neither party contends that the BOA is ambiguous.





[6]In
fact, because the BOA does not use the term ACommercial General Liability
Insurance@ as a
stand-alone term, the issue of whether that term  standing alone would encompass the four basic
coverages propounded by Bell is not before us. 
Instead we examine the language of the BOA, and it requires ACommercial
General Liability Insurance (including blanket contractual liability and broad
form property damage) with Products Liability/Completed Operations coverage,@ not
simply ACommercial
General Liability Insurance.@